IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HVLPO2, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> OXYGEN FROG, LLC, et al., <br><br> Defendants. | 8:15-CV-176 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on defendants Oxygen Frog, LLC, Stillwater Glass, LLC, and Scott D. Fleischman's motion to dismiss for lack of personal jurisdiction (filing 18). For the reasons explained below, the Court will grant the motion and dismiss this case.

## BACKGROUND

The plaintiff's allegations are, briefly summarized, as follows. The plaintiff HVLPO2, LLC is a Nebraska limited liability company with its principal place of business in Nebraska. Filing 1 at 1. It alleges that it is the assignee of two patents that "cover methods for managing an oxygen generating system." Filing 1 at 4. Oxygen Frog is a Florida limited liability company. Filing 1 at 1. Fleischman is a Florida resident and is an owner, officer, agent, or employee of Oxygen Frog. Filing 1 at 2. Stillwater Glass is a now-inactive Florida limited liability company, of which Fleischman was also an owner, officer, agent, or employee. Filing 1 at 2. The plaintiff alleges that all three defendants have directly and indirectly infringed its patents. Filing 1 at 4. Additionally, the plaintiff alleges that the defendants have made false statements about the plaintiff amounting to defamation, commercial disparagement, and deceptive trade practices. Filing 1 at 5, 71–80.

The plaintiff alleges specific facts that, it contends, support asserting personal jurisdiction over the defendants in this case. *See* filing 23 at 11–17. It has submitted affidavits in support of these allegations. *See* filing 25. To begin with, the plaintiff alleges that Oxygen Frog has engaged a national distributor, ABR Imagery, Inc. or ABR Images, Inc., to sell allegedly infringing products to customers across the nation on its website. Filing 23 at 14; filing 25-1 ¶ 82. In addition, the plaintiff alleges that Oxygen Frog has a website, which contains information about "Oxygen Frog's products, price

details, contact information, and information on how to order infringing products from Oxygen Frog." Filing 23 at 14; *see* filing 25-1 ¶¶ 68–74.

Next, the plaintiff alleges that the defendants have taken various actions on Facebook. Filing 23 at 14. First, the plaintiff alleges that Fleischman has a personal Facebook profile. *See,* filing 23 at 12–13; filing 25-1 ¶¶ 44, 57. A Facebook user with a personal profile may "friend" other users with personal profiles. *See,* filing 23 at 12; filing 25-1 ¶ 31. A user can make posts on his own profile, can view posts that his Facebook-friends have made on their profiles, can make posts on the profiles of his friends, can comment on posts friends have made, and can exchange messages with friends. *See,* filing 23 at 12; filing 25-1 ¶ 36. The plaintiff alleges that Fleischman—at times using the screen name "Scott Fleischman (Oxygen Frog)"—attempted to friend four Nebraska residents on Facebook. *See,* filing 23 at 12–13; filing 25-1 ¶¶ 59–63. Three of those individuals became Facebook friends with Fleischman. *See,* filing 23 at 12–13; filing 25-1 ¶ 59; filing 25-2 at 2; filing 25-3, filing 25-4. The plaintiff alleges that Fleischman made posts on his profile advertising Oxygen Frog's allegedly infringing products. *See,* filing 23 at 13; filing 25-1 ¶¶ 57–58. And at least two of the Nebraska residents he friended viewed the advertisements. *See,* filing 23 at 13; filing 25-3; filing 25-4.

Additionally, the plaintiff alleges that Oxygen Frog and Stillwater Glass both maintain business pages on Facebook. *See,* filing 23 at 14; filing 25-1 ¶¶ 45, 52. A business can make posts on its business page. *See,* filing 23 at 12; filing 25-1 ¶ 37. A business page cannot friend users on Facebook. *See,* filing 23 at 12; filing 25-1 ¶ 31. However, users may "like" a business page. *See,* filing 23 at 12; filing 25-1 ¶ 32. And the plaintiff has produced evidence that Oxygen Frog invited at least one Nebraska resident to like the Oxygen Frog business page on April 12, 2016. Filing 32. The plaintiff alleges that Oxygen Frog and Stillwater Glass have both made posts advertising allegedly infringing products. Filing 23 at 14; filing 25-1 ¶ 51, 52.

Next, the plaintiff alleges that on or about March 31, 2015, it sent cease-and-desist letters to Oxygen Frog and ABR Imagery. Filing 23 at 14; filing 25-1 ¶ 75. In response, the plaintiff alleges, Fleischman and Oxygen Frog posted statements about the dispute on Oxygen Frog's website, on Oxygen Frog's Facebook business page, and on a Facebook group page titled ">Glassifieds< Tools and Equipment, New and Used." Filing 23 at 14; filing 25-1 ¶¶ 76–80. A group page on Facebook is a page where any member of the group may make posts and view and comment on the posts of others. Filing 23 at 12; filing 25-1 ¶¶ 38–40. Some members of the group commented on the post, including at least one Nebraska resident, Matthew Losee. Filing 23 at 14–15; filing 25-1 ¶ 79. Fleischman responded to some of these comments, including Losee's. Filing 23 at 14; filing 25-1 ¶ 79.

2

The plaintiff alleges that certain assertions in the defendants' posts constitute defamation, commercial disparagement, and deceptive trade practices. Filing 23 at 15–17. Specifically, the plaintiff points to each of the following sentences in the statement allegedly posted by Fleischman and Oxygen Frog:[1]

> . . . . [HVLPO2] claim[s] to be the original inventor of the concept of storing oxygen generated by oxygen concentrators in a storage tank and delivering that oxygen to a torch. High Volume Oxygen holds several patents regarding this technology, and has demanded that OxygenFrog shut down all business operations related to oxygen. High Volume's attorney also threatened our national distributor, and forced them to discontinue any association with OxygenFrog.
>
> . . . .
>
> The concept of on-site, on-demand, oxygen generation has been around for decades, long before High Volume Oxygen filed its patents. There are dozens of companies that offer both larger and smaller versions of the systems that High Volume Oxygen claims as their own original technology.

Filing 23 at 15–17; filing 25-1 at 118.

## ANALYSIS

The defendants have moved to dismiss the plaintiff's complaint, arguing that they are not subject to personal jurisdiction in Nebraska. Filing 18. The plaintiff, on the other hand, argues that this Court can assert specific personal jurisdiction over the defendants for each of the claims. Filing 23 at 21, 33. For the reasons explained below, the Court concludes that the defendants are not subject to personal jurisdiction in Nebraska.

### I. Applicable Law

Before beginning its personal jurisdiction analysis, the Court must first determine what law controls. An assertion of personal jurisdiction over an

---

[1] The plaintiff, in its response to the present motion to dismiss, contends that the defendants made several other defamatory statements as well. *See* filing 23 at 15–17. However, those statements are not alleged in the complaint. The Court's task is to determine whether personal jurisdiction exists over the defendants for the alleged claims, not for any conduct that might hypothetically give rise to liability.

3

out-of-state defendant is proper "if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011)). Nebraska's Supreme Court has interpreted its state's long-arm statute as coextensive with the limits of due process. *See Crystal Clear Optical, Inc. v. Silver*, 531 N.W.2d 535, 539 (Neb. 1995). Thus, this Court's inquiry is whether the assertion of personal jurisdiction over the defendants comports with due process under the United States Constitution.

Normally when analyzing whether an assertion of personal jurisdiction would comply with the requirements of due process, a district court is bound by the precedent of its regional circuit—in this case, the Eighth Circuit. But in a patent case, Federal Circuit precedent applies to "substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'" *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (quoting *Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996)).

The plaintiff has brought various claims of patent infringement (counts 1–24 of its complaint), as well as state law tort claims of defamation (counts 25–26), commercial disparagement (counts 27–28), and deceptive trade practices (counts 29–30). Filing 1. For the patent infringement claims, the plaintiff argues that the Court should apply Federal Circuit precedent in determining whether it has personal jurisdiction over the defendants. Filing 23 at 1. With respect to the state law tort claims, the plaintiff argues that Federal Circuit precedent should apply to some, and Eighth Circuit precedent to others. Filing 23 at 1.

The Court agrees that Federal Circuit precedent applies to the patent infringement claims. But the Court need not definitively resolve which circuit's precedent should apply to each state law claim, because under either circuit's precedent, the outcome is the same, and the Court lacks jurisdiction.

## II. Jurisdiction under Federal Circuit Precedent

Under Federal Circuit law, at the motion stage, a plaintiff need only make a prima facie showing that personal jurisdiction over the defendants exists. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits or other documentary evidence, all factual disputes are resolved in the plaintiff's favor. *Id.*

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum,

4

he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internat'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The "minimum contacts" necessary may be the basis for either general or specific jurisdiction. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985)). In this case, the plaintiff argues that this Court can assert specific jurisdiction over the defendants. Filing 23 at 21, 33.

The Federal Circuit has outlined a three-pronged test for determining whether specific jurisdiction exists: "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012). "The first two factors correspond to the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor with the 'fair play and substantial justice' prong." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

(a) <u>Purposefully directed activities</u>

The first prong of the three-part test is whether the defendant purposefully directed its activities at residents of the forum state. *AFTG-TG*, 689 F.3d at 1361. The plaintiff contends that the defendants purposefully directed their activities toward Nebraska in several ways. Filing 23 at 21–25. First, it alleges that Oxygen Frog used a third-party national distributor, maintains a nationally accessible website, maintains a Facebook business page, invited a Nebraska resident to like its business page, and posted advertisements on its business page for products that allegedly infringe the plaintiff's patents. Filing 23 at 24–25; filing 32. Second, it alleges that Fleischman—using at times the screen name "Scott Fleischman (Oxygen Frog)"—Facebook-friended Nebraska residents and posted advertisements for Oxygen Frog's allegedly infringing products on his Facebook profile. Filing 23 at 22–23. Third, the plaintiff alleges, Stillwater Glass allegedly posted advertisements for infringing products on its Facebook business page. Filing 23 at 24. Finally, Oxygen Frog and Fleischman allegedly posted defamatory statements on the Oxygen Frog website, the Oxygen Frog Facebook business page, and the Glassifieds Facebook group page. Filing 23 at 14, 23. The Court shall consider each of these activities in turn.

*1. National distributor*

First, the plaintiff contends that Oxygen Frog's use of a national distributor amounts to activity purposefully directed at Nebraska. Filing 23 at 25. There is an unresolved question as to when placing a product in the stream of commerce can be sufficient to establish personal jurisdiction.

5

*Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1381 (Fed. Cir. 2015). The question dates back to *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). In that case, Justice O'Connor, joined by another three justices, concluded that personal jurisdiction does not exist over a defendant where that defendant merely places a product in the stream of commerce, even when it is foreseeable that the product will reach the forum state. *Id.* at 111–12. Rather, the defendant must take some action "indicat[ing] an intent or purpose to serve the market in the forum State" for jurisdiction to be appropriate. *Id.* at 112. Conversely, Justice Brennan, joined by three other justices, concluded that a defendant *is* subject to personal jurisdiction when the defendant places a product in the stream of commerce and it is foreseeable that the product will end up in the forum state—for instance, because the defendant is "aware that the final product is being marketed in the forum State." *Id.* at 117.

The Supreme Court revisited the issue in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), but again failed to reach a consensus. Justice Kennedy, joined by three other justices, concluded that jurisdiction may be asserted over a defendant "only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Nicastro*, 564 U.S. at 882. Justice Breyer, joined by Justice Alito, concurred in the judgment, but on the grounds that the defendant in the case made only one sale in the forum state through its national distributor. *Id.* at 888–89. The concurrence suggested that either some activity specifically targeting the forum state, or a "regular flow" of sales in the forum state, is necessary to establish personal jurisdiction. *Id.*

The Federal Circuit has concluded that *McIntyre* did not alter its existing precedent with respect to the stream-of-commerce theory in personal jurisdiction. *AFTG-TG, LLC*, 689 F.3d at 1363. The Federal Circuit has not taken a position on whether foreseeability or intent is the proper test. *Id.* at 1364–65. But it has concluded that, at the very least, personal jurisdiction is lacking where the plaintiff fails to meet the foreseeability standard articulated by Justice Brennan in *Asahi*. *See Celgard*, 792 F.3d at 1382.

Thus, the Federal Circuit determined in *Celgard* that there was no personal jurisdiction over a defendant manufacturing company where the company sold products through a national distributor, but where there was no evidence that it was aware its products were marketed in the forum state, or that its products had, in fact, ever reached the forum state. *Id.* Similarly, here, although there is evidence Oxygen Frog used a national distributor to sell its products, there is no evidence that the national distributor marketed Oxygen Frog's products in Nebraska, or indeed that Oxygen Frog's products

have ever entered Nebraska. Accordingly, it was not foreseeable that Oxygen Frog's products would reach Nebraska, and Oxygen Frog's use of a national distributor does not constitute an activity purposefully directed toward Nebraska.

*2. Oxygen Frog website*

Second, the plaintiff contends that Oxygen Frog purposefully directed activities at Nebraska by maintaining a nationally accessible website. Filing 23 at 24. Under Federal Circuit precedent, a forum state resident's ability to access a website does not, by itself, show that a defendant has purposefully directed activity toward the forum state. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). But the Federal Circuit has not expressly decided what more is required before maintaining a website accessible in a forum state can give rise to personal jurisdiction.

The Federal Circuit most recently addressed the issue in *Trintec Industries*. In *Trintec*, the defendant—a watch company—maintained a nationally accessible website, where customers could create custom watch designs, email the company, order samples, contact suppliers using hyperlinks, and find the company's phone number. *Id.* at 1278. The court considered two competing frameworks for analyzing when maintaining a website might give rise to personal jurisdiction. First, the court noted, many cases have suggested that "the availability and use of a highly interactive, transaction-oriented website (as opposed to an 'essentially passive' website) by itself may support long-arm jurisdiction wherever the site is available to potential customers for the purpose of doing business." *Id.* (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Conversely, the court noted, other cases "have indicated that something additional beyond a website is required to establish personal jurisdiction." *Id.*

Ultimately, the Federal Circuit declined to adopt either of these positions. *Id.* Instead, it determined that because the plaintiff had produced no evidence as to how often the interactive elements of the website were used, or whether the forum state's residents transacted business on the website, there was insufficient evidence to conclude that jurisdiction was appropriate.[2]

---

[2] It is somewhat unclear to what extent the Federal Circuit's decision was premised on its interpretation of the District of Columbia's long-arm statute, and to what extent it was premised on constitutional due process analysis. But the inquiries overlap. The D.C. long-arm statute specifies that D.C. courts can exercise personal jurisdiction over a defendant when the claim arises from the defendant's "transacting any business in the District of Columbia." D.C. Code § 13–423 (1981). And "[w]ith limited exceptions, the Code's 'transacting any business' clause has been interpreted to provide jurisdiction to the full

*Id.* at 1281; *see also Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (holding that a defendant's website did not create "continuous and systematic" contacts for the purpose of establishing general jurisdiction, because it was nationally accessible, and not targeted to residents of the forum state).

Here, maintaining the Oxygen Frog website does not constitute purposefully directed activity toward Nebraska under either of the tests the *Trintec* court considered. The plaintiff alleges that the website "disseminates, to customers and potential customers, information about Oxygen Frog's infringing products, instructional videos, prices, contact information, and interactive communication features between customers and potential customers and Oxygen Frog." Filing 23 at 24. But the only "interactive communications feature" the plaintiff has produced evidence of is a simple email contact form. *See* filing 25-1 at 45. There is no evidence that a customer could order products or otherwise transact business with the defendants on the website, let alone that such transactions occurred between Nebraska residents and the defendants. In short, the Oxygen Frog website has only minimal interactivity—much less than the website the *Trintec* court confronted—and can hardly be said to be a "highly interactive, transaction-oriented website." *See Trintec*, 395 F.3d at 1281. Nor has the plaintiff produced evidence that the website was targeted at Nebraska residents in some way.

Accordingly, the defendants' maintenance of the Oxygen Frog website fails to constitute purposefully directed activity under either of the two tests the *Trintec* court proposed as possibilities. And several other courts have reached the same result under similar circumstances.[3]

---

extent allowed by the Due Process Clause." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995), amended (July 28, 1995).

[3] Some have relied on the *Zippo* test to reach this result. *See, e.g.*, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (finding no jurisdiction where the defendant's website provided a mail-in order form, phone number, address, and email address, but did not take orders directly*).* Others have reached this result on the grounds that the website, though interactive, did not target the residents of the forum state. *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) (finding no personal jurisdiction where the defendant operated a website on which transactions could be conducted, but where the website did not target the forum state, and was clearly designed to accommodate European customers). And still others have considered both the level of interactivity and whether the website targeted the forum state. *See, e.g.*, *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016) (finding no specific personal jurisdiction where the defendant maintained a nationally accessible website that displayed email addresses and phone numbers for contacting the company, and was not targeted to forum state residents); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714–15 (4th Cir. 2002) (finding no specific

*3. Facebook friending and invitations to like*

Next, Fleischman allegedly friended Nebraska residents on Facebook, filing 23 at 13, and Oxygen Frog allegedly invited a Nebraska resident to like its business page, filing 32. The Federal Circuit has not expressly addressed what Facebook activities might constitute purposeful direction in the personal jurisdiction context. However, it seems apparent that friending a Nebraska resident and inviting a Nebraska resident to like a business page are both activities that are purposefully directed at Nebraska.

*4. Oxygen Frog Facebook business page*

Next, maintaining the Oxygen Frog Facebook business page is not an activity purposefully directed to Nebraska. First, the interactive elements of Facebook largely mirror the interactive elements of the Oxygen Frog website: the company can send and receive communications—albeit in the form of Facebook posts or messages instead of emails—but there is no evidence that Oxygen Frog took orders, accepted payment, or otherwise transacted business on its business page. *See* filing 23 at 12, 14. Second, the advertising posted on the Oxygen Frog business page, like the information on the Oxygen Frog website, is accessible to anyone in the country, and not targeted to a particular state. It is true that one Nebraska resident was invited to like the Oxygen Frog page. Filing 32. However, there is no evidence that he accepted this invitation, and actually viewed advertisements. Thus, even if that single invitation was an attempt to purposefully direct advertisements at Nebraska, it was not successful.

Thus, the Oxygen Frog business page, like the Oxygen Frog website, is a nationally accessible, minimally interactive website that does not target Nebraska. Accordingly, maintaining the business page does not constitute an activity purposefully directed at Nebraska. And several other courts have likewise concluded that maintaining a nationally accessible Facebook page, without evidence that the page targeted the forum state, is not sufficient to establish personal jurisdiction.[4]

---

personal jurisdiction where the defendant's website contained no means for transacting business with the defendant, and there was no targeting of the forum state).

[4] *See, Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, No. 3:12-CV-771-JAG, 2013 WL 4061259, at *4 (E.D. Va. Aug. 9, 2013); *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 543 (M.D.N.C. 2015); *Lyons v. Rienzi & Sons, Inc.*, No. 09-CV-4253, 2012 WL 1393020, at *5 (E.D.N.Y. Apr. 23, 2012); *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, No. CV-11-2304-PHX-NVW, 2013 WL 442296, at *2 (D. Ariz. Feb. 5, 2013); *Sweetgreen, Inc. v. Sweet Leaf, Inc.*, 882 F. Supp. 2d 1, 5 (D.D.C. 2012); *Woodhurst v. Manny's Inc.*, 832 N.W.2d 384 at *2 (Iowa Ct. App. 2013).

*5. Stillwater Glass's Facebook business page*

As with the Oxygen Frog business page, there is no evidence that the Stillwater Glass business page was used for transacting business, or was targeted specifically at Nebraska residents. *See* filing 23 at 14. Thus, maintaining the Stillwater Glass business page does not amount to an activity purposefully directed at Nebraska.

*6. Fleischman's personal Facebook profile*

Next, the plaintiff contends that Fleischman purposefully directed activity toward Nebraska by posting advertisements for and information about Oxygen Frog on his personal Facebook profile. Filing 23 at 22–23. In some respects, Fleischman's Facebook profile is analogous to the Oxygen Frog business page and website: they are all nationally accessible and have minimal interactivity. However, Fleischman's Facebook profile, unlike the Oxygen Frog website and business page, is at least somewhat targeted toward Nebraska: Fleischman posted the advertisements on his profile after friending Nebraska residents. *See* filing 23 at 12–13.

This distinction is analogous to one several courts have drawn between placing an advertisement in a magazine of national circulation, and directly mailing an advertisement to a resident of a forum state.[5] Many courts—including the Federal Circuit—have concluded that placing an advertisement in a national publication is not an activity purposefully directed to a forum state, because the defendant has minimal control over where its advertisements are ultimately viewed.[6] In contrast, many courts have concluded that mailing advertisements directly to a forum state resident *is*

---

[5] Other courts have also analogized a passive, non-targeted website to an advertisement placed in a national magazine. *See, e.g.*, *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1164 (W.D. Wis. 2004); *Hearst Corp. v. Goldberger*, 1997 WL 97097, at \*10 (S.D.N.Y. Feb. 26, 1997).

[6] *See, e.g.*, *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1305 (10th Cir. 1994*); Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 43 (8th Cir. 1988); *Growden v. Ed Bowlin & Assocs., Inc.*, 733 F.2d 1149, 1151–52 (5th Cir. 1984); *see also, Hamilton v. Accu-Tek*, 32 F. Supp. 2d 47, 70 (E.D.N.Y. 1998) (finding that an advertisement in a national trade magazine was not a "particularly weighty" contact with the forum state); *Scheidt v. Young*, 389 F.2d 58, 60 (3d Cir. 1968) (holding that a defendant was not subject to personal jurisdiction on the basis of advertisements it placed in a New York newspaper that also had circulation in the forum state); *Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, 2011 WL 333337, at \*3 (D. Ariz. Jan. 31, 2011) (collecting cases).

10

an activity purposefully directed at the forum state, because doing so reveals the defendant's intent to serve the market in that state.[7]

Similarly, while placing an advertisement on a nationally accessible, non-targeted website does not demonstrate an intent to do business in a particular state, placing an online advertisement that is specifically targeted to forum state residents does demonstrate such an intent. *Cf. Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (finding that the defendant was subject to personal jurisdiction in part because its websites featured third-party advertisements directed at the forum state). Accordingly, the Court concludes that by posting advertisements for Oxygen Frog products on his personal Facebook profile after friending Nebraska residents, Fleischman has purposefully directed activities toward Nebraska.

*7. Allegedly defamatory statements*

Finally, there are the allegedly defamatory statements posted on the Oxygen Frog website, Oxygen Frog business page, and the Glassifieds group page. *See* filing 23 at 14–15. As explained above, the Oxygen Frog website and business page are neither interactive, nor targeted at Nebraska residents. Thus, the defendants did not purposefully direct activities at Nebraska merely by maintaining the website and business page. Similarly, there is no evidence that the Glassifieds Facebook group page is targeted toward Nebraska residents, or that the defendants took some action to ensure that Nebraska residents viewed their posts on the Glassifieds group page.

However, when a defendant is alleged to have committed an intentional tort, the effects test set forth in *Calder v. Jones*, 465 U.S. 783 (1984) is an additional avenue for asserting specific jurisdiction. The effects test holds that a defendant's tortious acts can serve as the minimum contacts required for specific jurisdiction if his acts were calculated to cause injury to the plaintiff in the forum state. *Calder*, 465 U.S. at 791.

To illustrate, in *Calder*, a reporter and editor who were residents of Florida published an allegedly libelous article about an actress who resided in California. *Id.* at 785–86. The Court held that the defendants were subject to specific jurisdiction in California because they relied on California sources, knew that their article would cause the plaintiff distress where she resided in California, and knew that their article would damage the plaintiff's

---

[7] *See, e.g., Myers v. Casino Queen, Inc.*, 689 F.3d 904, 913 (8th Cir. 2012); *Casual Panache, Inc. v. Burmax Co., Inc.*, No. 15-CV-234-WMC, 2016 WL 1259436, at *4 (W.D. Wis. Mar. 30, 2016); *Hamilton*, 32 F. Supp. 2d at 70; *U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n*, 690 F. Supp. 317, 320 (D. N.J. 1988); *Sollinger v. Nasco Int'l Inc.*, 655 F. Supp. 1385, 1388 (D. Vt. 1987); *see also Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 566 (S.D.N.Y. 2000) (finding personal jurisdiction under New York's long-arm statute in part on the basis of direct-mail advertisements).

professional reputation in an industry that operates largely in California. *Id. at 788–89.* As the Court explained, "California is the focal point both of the story and of the harm suffered." *Id.* at 789.

However, the Supreme Court has clarified that the "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014). Instead, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 1122. Thus, the Court explained, specific jurisdiction was proper in *Calder* only because "the 'effects' caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there." *Id.* at 1124.

Here, there is no evidence that the defendants' conduct itself forms a connection with Nebraska. First, there is no evidence—as there was in *Calder*—demonstrating that the plaintiff's industry operates primarily in Nebraska, such that the alleged damage to the plaintiff's reputation would occur primarily in Nebraska. Nor is there evidence that the defendants sought to harm the plaintiff's reputation specifically with Nebraska residents: as discussed above, neither the Oxygen Frog website, nor the Oxygen Frog business page, nor the Glassifieds page was specifically targeted to Nebraska residents. And the alleged defamatory statements themselves do not mention Nebraska, rely on Nebraska sources, or relate events that took place in Nebraska: they focus primarily on the letters the plaintiff sent to Oxygen Frog and its national distributor. In other words, the only connection between the defendants' conduct and Nebraska is the fact that its conduct affected the plaintiff, and the plaintiff has its principal place of business in Nebraska. As the Supreme Court has explained, this is insufficient to establish minimum contacts under the *Calder* effects test.

(b) Relationship of activities to claims

The second prong of the Federal Circuit's specific jurisdiction framework is whether the cause of action arises out of or directly relates to those activities the defendants have purposefully directed at the forum state. *AFTG-TG, LLC*, 689 F.3d at 1361. As discussed above, the activities the defendants purposefully directed toward Nebraska are: Fleischman's Facebook-friending of Nebraska residents, Oxygen Frog's invitation to a Nebraska resident to like its Facebook business page, and Fleischman's posting of advertisements on his personal Facebook profile (after friending the Nebraska residents).

*1. Patent claims – direct infringement*

First, the plaintiff's claims of direct patent infringement do not arise from or directly relate to the activities the defendants purposefully directed at Nebraska. Direct patent infringement occurs when someone "without authority makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). Thus, in a patent infringement case, for there to be specific personal jurisdiction, the plaintiff "would have to allege that [the defendant] did one of those listed activities in [the forum state]." *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999).

Initially, the actions of friending Nebraska residents and inviting a Nebraska resident to like the Oxygen Frog business page clearly do not give rise to the patent infringement claims. These activities do not, by themselves, constitute making, using, offering to sell, or selling patented inventions.

Next, the plaintiff contends that its patent infringement claims arise from or directly relate to Fleischman's posts about Oxygen Frog on his Facebook profile. Filing 23 at 26. Fleischman's Facebook activities, according to the plaintiff, constitute offers to sell because they "resulted in Nebraska residents viewing Oxygen[] Frog's website, which described Oxygen Frog's products and included a price for the products." Filing 23 at 26.[8] The plaintiff argues that under Federal Circuit law, an offer to sell occurs "where the defendant manufacturer ha[s] communicated to prospective buyers both a description of the product and a price at which it can be purchased." Filing 23 at 26 (internal quotation marks omitted) (quoting *HollyAnne Corp.*, 199 F.3d at 1308). Thus, the plaintiff contends, a link to Oxygen Frog's website, which contains product descriptions and pricing information, is an offer to sell. Filing 23 at 26.

There is some support for this proposition in the Federal Circuit's case law. In *3D Systems, Inc. v. Aarotech Laboratories, Inc.* 160 F.3d 1373, 1379 (Fed. Cir. 1998), the Federal Circuit found that a marketing letter constituted an offer to sell under the meaning of § 271(a) when it contained a description of a product and pricing information for the product. *HollyAnne Corp.*, the case the plaintiff relies on, restates *3D System's* test. *See HollyAnne Corp.*, 199 F.3d at 1308. However, after the Federal Circuit decided *HollyAnne* and *3D Systems*, it revised its "offer to sell" analysis in light of the Supreme Court's opinion in *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998). *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000); *see also, Xactware, Inc. v. Symbility Sol. Inc.*, 402 F. Supp. 2d 1359, 1367 (D. Utah 2005) (explaining that *Rotec* offers "a much different analysis" from *3D*

---

[8] The Court assumes for the sake of its analysis that linking to a website that contains an offer to sell is equivalent to making an offer to sell directly.

13

*Systems*); *EBS Auto. Servs. v. Illinois Tool Works, Inc.*, 2011 WL 4021323, at *12 n.13 (S.D. Cal. Sept. 12, 2011) (questioning the continuing viability of the *3D Systems* rule in light of *Rotec*).

In *Rotec*, the Federal Circuit concluded that "the meaning of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority." *Rotec*, 215 F.3d at 1255. Thus, it defined an offer to sell as a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (quoting Restatement (Second) of Contracts § 24 (1981)). The court further held that "offer to sell" under § 271(a) has the same meaning as "commercial offer for sale" in the context of determining whether an on-sale bar applies under 35 U.S.C. § 102(b), because both "invoke the traditional contractual analysis." *Id.*

Under traditional contract analysis, an offer to sell is that "which the other party could make into a binding contract by simple acceptance (assuming consideration)." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) (analyzing the definition in the context of § 102(b)). In other words, the offer must be definite enough that it "giv[es] the addressee the apparent power to conclude a contract without further action by the other party." Restatement (Second) of Contracts § 24 cmt. a, Reporter's Note (1981). Under this principle, a communication naming a price can be—but is not necessarily—an offer. *See Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001) (explaining that whether such a communication is an "offer" in the context of § 102(b) depends on the circumstances of the case).

The Court concludes that under the circumstances of this case, Oxygen Frog's website is not sufficiently definite to constitute an offer. Although the website contains descriptions of the allegedly infringing products, and some pricing information, it does not include terms such as shipping costs, time for delivery, or quantity. *See* filing 25-1 at 115. Thus, a customer could not bind Oxygen Frog to a contract to purchase the products without some additional negotiation. And the pricing page itself contemplates that further negotiation will take place before a contract can be completed: it asks prospective customers to email the company for "consulting and ordering" and notes that it "also can offer special pricing." Filing 25-1 at 115. Altogether, it is clear that Oxygen Frog's website lacks sufficiently definite terms so as to be an offer to sell under § 271(a).

And other courts agree that marketing materials containing product descriptions and pricing information—without more—do not constitute offers to sell under the meaning of § 271(a), and therefore do not give rise to specific

14

jurisdiction. *See, e.g., EBS Auto. Servs.*, 2011 WL 4021323, at *13; *Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 44 (D. Mass. 2003); *see also Ductcap Products, Inc. v. J & S Fabrication, Inc.*, 2009 WL 3242022, at *3 (D. Minn. Oct. 2, 2009) (finding an advertisement was not an offer to sell when it did not list price, quantity, or terms of delivery). Accordingly, the plaintiff's claims of direct infringement do not arise from or directly relate to the activities the defendants purposefully directed toward Nebraska.

*2. Patent claims – indirect infringement*

The plaintiff also contends that Fleischman's posts on his personal Facebook profile give rise to the plaintiff's claims for indirect infringement. Specifically, the plaintiff argues that Fleischman and Oxygen Frog "actively induced others . . . to infringe [the plaintiff's] Patents." Filing 23 at 28. Under 35 U.S.C. § 271(b) "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To establish inducement, the plaintiff must "prove that once the defendants knew of the patent, they 'actively and *knowingly* aided and abetted another's direct infringement.'" *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (internal quotation marks omitted) (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)).

The plaintiff contends that Fleischman induced others to infringe the plaintiff's patents "by offering for sale the infringing Oxygen Frog products to customers and potential customers . . . and by providing to potential customers, including Nebraska residents, instructions of how to operate and install the Oxygen Frog product in an oxygen system." Filing 23 at 28. First, as explained above, Fleischman's posts on his personal Facebook profile do not constitute offer to sell under the meaning of § 271. Next, although the plaintiff asserts that Fleischman provided instructions on his Facebook profile for how to operate and install the Oxygen Frog product, none of the evidence the plaintiff cites appears to support that particular assertion. Accordingly, the plaintiff's claims for indirect infringement do not arise from or directly relate to the activities the defendants purposefully directed toward Nebraska.

*3. State law claims*

Finally, as explained above, the posting of the statements allegedly giving rise to the state law claims on the Oxygen Frog website, the Oxygen Frog business page, and the Glassifieds group page are not activities purposefully directed at the forum state. Thus, the tort claims do not arise out of or directly relate to the activities that the defendants purposefully directed toward Nebraska.

15

(c) <u>Reasonableness and fairness</u>

Finally, the third prong of the Federal Circuit's specific jurisdiction test is "whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC*, 689 F.3d at 1361. Courts look to this prong "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). If a court concludes that that the defendant has "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable," then it should decline to assert jurisdiction over the defendant, despite the existence of minimum contacts. *Id.* at 476–77. However, where a defendant has not established the requisite minimum contacts with the forum state, the Court may not exercise jurisdiction over that defendant even if it is otherwise reasonable and fair. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

Here, the Court has already determined that the defendants lack the requisite minimum contacts with Nebraska. Accordingly, it is unnecessary to determine whether asserting personal jurisdiction over the defendants would be reasonable and fair. In sum, there is no personal jurisdiction over the defendants under Federal Circuit precedent for the patent infringement claims and the state law tort claims that are intimately involved with the enforcement of the plaintiff's patent right.

### III. Jurisdiction under Eighth Circuit Precedent

The Court now turns to whether, under Eighth Circuit precedent, it has personal jurisdiction over the defendants for those state law tort claims that are not intimately involved with the enforcement of the patent right. As described above, the plaintiff has brought claims of defamation, commercial disparagement, and deceptive trade practices, on the grounds that Fleischman and Oxygen Frog posted false statements about their dispute with the plaintiff on the Oxygen Frog website, the Oxygen Frog Facebook business page, and the Glassifieds Facebook group page. Filing 23 at 14.

Under Eighth Circuit precedent, to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011). But where, as here, "the parties submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance one for summary judgment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). The plaintiff bears the burden of proof to establish personal jurisdiction. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

16

"At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Creative Calling Sols., Inc.,* 799 F.3d at 979.

The Eighth Circuit has established a five-factor test to determine whether a defendant has the minimum contacts necessary for due process: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." *Steinbuch v. Cutler,* 518 F.3d 580, 586 (8th Cir. 2008).

The requisite minimum contacts may be the basis for either general or specific jurisdiction. *Johnson v. Arden,* 614 F.3d 785, 794 (8th Cir. 2010). The plaintiff here asserts that this Court has specific jurisdiction over the defendants. Filing 23 at 21, 33. Specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch,* 518 F.3d at 586.

The Eighth Circuit, "[w]hen considering the sufficiency of internet contacts under a specific jurisdiction analysis," has "found the *Zippo* test instructive." *Johnson,* 614 F.3d at 796. The *Zippo* test—also referenced by the Federal Circuit in *Trintec*—establishes a sliding scale, in which "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co.,* 952 F. Supp. at 1124. On one side of the scale "are situations where a defendant clearly does business over the Internet," and "[a]t the opposite end are situations where a defendant has simply posted information" on a passive website. *Id.*

Additionally, like the Federal Circuit, in the context of a case involving an intentional tort, the Eighth Circuit uses the *Calder* effects test. *Johnson,* 614 F.3d at 796. In the Eighth Circuit, the *Calder* test does not supplant the five-factor test, but is "merely . . . an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Id.* at 796–97. As described above, the *Calder* effects test holds that a defendant's tortious acts can provide the requisite minimum contacts for specific jurisdiction if the defendant's acts were calculated to cause injury to the plaintiff in the forum state. *Calder,* 465 U.S. at 791. But it is insufficient to establish merely that the defendant's acts injured the plaintiff, and that the plaintiff has connections with the forum state. *Walden,* 134 S. Ct. at 1124; *see*

17

*Johnson,* 614 F.3d at 797 (holding that "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction"). Rather, the defendant's own conduct must establish the connection. *Walden,* 134 S. Ct. at 1122.

The Eighth Circuit's opinion in *Johnson* best illustrates the interplay between the *Zippo* test and the *Calder* effects test. In *Johnson*, the defendant was alleged to have posted defamatory statements on a nationally accessible website owned by a third party, www.ComplaintsBoard.com. *Johnson,* 614 F.3d at 795. First, the Eighth Circuit found that the website was not "interactive" as defined by the *Zippo* test. *Id.* at 796. The Eighth Circuit explained that unlike a website that allows active contract formation, on www.ComplaintsBoards.com, "users may actually only post information" and "the site merely makes information available to other people." *Id.* Next, the Eighth Circuit considered whether personal jurisdiction existed under the *Calder* effects test. *Id.* The defendant allegedly posted that the plaintiffs "operated from Unionville, Missouri, where they killed cats, sold infected cats and kittens, brutally killed and tortured unwanted cats and operated a 'kitten mill' in Unionville, Missouri." *Id.* The Eighth Circuit concluded that there was "no evidence that the www.ComplaintsBoard.com website specifically targets Missouri, or that the content of Heineman's alleged postings specifically targeted Missouri." *Id.* And although the post was aimed at the plaintiffs—who resided in Missouri—and mentioned Missouri, those were "incidental" contacts that were "not 'performed for the very purpose of having their consequences' felt in Missouri." *Id.*

Here, as in *Calder*, there is no personal jurisdiction over the defendants for the allegedly defamatory statements they posted on the Oxygen Frog website, the Oxygen Frog business page, and the Glassifieds group page. First, the *Zippo* test fails to establish personal jurisdiction over the defendants because, as in *Calder*, the defendants merely posted their statement on websites with minimal interactivity. Second, like in *Calder*, neither the websites nor the content of the allegedly defamatory statements targeted Nebraska. Thus, the defendants have not established the requisite minimum contacts with Nebraska in this case.

In sum, there is no specific personal jurisdiction under either Federal Circuit or Eighth Circuit precedent over the defendants for the plaintiff's claims.

IT IS ORDERED:

1. The defendants Oxygen Frog, LLC, Stillwater Glass, LLC, and Scott D. Fleischman's motion to dismiss for lack of personal jurisdiction (filing 18) is granted.

2. The plaintiff's motion for leave to file second affidavit of Marc Kornbluh (filing 32) is granted.

3. The plaintiff's motion to amend (filing 28) is denied as moot.

4. This matter is dismissed without prejudice.

5. A separate judgment will be entered.

Dated this 20th day of May, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge